## Case No. 10,222.

### The NIAGARA v. VAN PELT.

[See Case No. 10,220.]

———

## Case No. 10,223.

### NICHOLAS v. MURRAY et al.

[5 Sawy. 320;[1] 18 N. B. R. 469.]

Circuit Court, D. Oregon.　Nov. 25, 1878.

DEMURRER FOR WANT OF EQUITY — NE UNQUES ASSIGNEE—FRAUDULENT CONVEYANCES—LIMITATION — ANNULLING A DISCHARGE — LIMITATION —ESTATE OF BANKRUPT.

1. A demurrer for want of equity will not lie to a bill that is not deficient in substance, although for some technical reason—as the lapse of time or want of jurisdiction in the court—the relief sought for cannot be attained in that suit.

2. A demurrer that a bill does not state facts sufficient to constitute a cause of suit is unknown to chancery practice. and at most is nothing more than the general demurrer for want of equity.

3. An objection to a bill, in which the complainant describes himself as an assignee, that he is not legally such assignee must be made by plea and not demurrer.

4. A suit by an assignee to set aside a fraudulent conveyance. made by the bankrupt after his discharge, of property concealed prior thereto, is not a suit to annul such bankrupt's discharge, and may therefore be brought in the circuit court.

5. Such suit may be brought at any time within two years from the discovery of the fraud by the assignee or those whom he represents.

[Cited in Re Brown. Case No. 1,983; West Portland Homestead Ass'n v. Lownsdale, 17 Fed. 207.]

6. The district court which granted a discharge alone has jurisdiction of a proceeding to annul it; and semble, that such proceeding must be brought by the creditor and may be brought at any time within two years from the discovery of the fraud for which it is sought to be set aside.

7. The statute of limitations of the state where the bankrupt resides. applies to the proof of debts against his estate; and such statute continues to run against such debts after the adjudication in bankruptcy, and therefore no claim can be proven or enforced against such estate, unless an action could be maintained thereon in the court of such state.

[Disapproved in Re McKinney, 15 Fed. 912.]

8. The estate of a bankrupt. after satisfying the valid claims against it, belongs to the bankrupt. and therefore a conveyance by him alleged to be fraudulent as against creditors, will not be set aside on a suit by the assignee, where it appears that there are no debts provable against the estate.

[9. Cited in U. S. v. Griswold. 8 Fed. 501, 562, to the point that a discharge, even though fraudulently obtained. is binding until set aside or annulled in a suit brought for that purpose, in the court where it was granted. by an existing or injured creditor or the official assignee.]

———

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

This suit was brought on May 21, 1878 [by H. B. Nicholas, assignee in bankruptcy, against James W. Murray and others], to have a discharge in bankruptcy heretofore granted to the defendant Murray declared fraudulent and void; and to have certain conveyances of lots 1, 2, 7 and 8, in block 65 in Caruthers's addition to Portland, set aside as being made to defraud the creditors of said bankrupt.

John B. Waldo, for complainant.

Joseph N. Dolph, for defendants.

DEADY, District Judge.　The material facts stated in the bill are that on June 6, 1868, the defendant Murray was duly adjudged a bankrupt in the district court of this district, upon his own petition filed therein on May 30, 1868; that an assignee of his estate was appointed and acted as such until his discharge on April 17, 1872, and that on February 20, 1869, said Murray fraudulently procured his discharge in bankruptcy; that it appeared from the schedules of said bankrupt that his assets amounted in value to only two hundred and fifty-eight dollars, all of which was set apart to him as exempt, and that his creditors were four in number—three of whom resided in San Francisco and one in Missouri; that these debts aggregated five thousand five hundred and twenty-seven dollars and forty-eight cents, and arose upon simple contract, four thousand dollars of which was contracted in Missouri and became due not later than January, 1864, the remainder—one thousand five hundred and twenty-seven dollars and forty cents—being contracted in California. and coming due not later than August, 1866; that the California creditors relying upon the statement in said schedule, from which it appeared there were no assets applicable to the payment of claims against the estate. failed to prove their debts; that the debt stated to be due the Missouri creditor was not proven and is false and fictitious; that at and before the filing of the petition aforesaid the bankrupt was the owner of the premises aforesaid, and during the year 1857 erected a dwelling thereon, but fraudulently omitted the same from his schedule; that the legal title thereto was in a third person, who held the same in trust for the bankrupt, and with intent to defraud the creditors of the latter; that on July 13, 1869, said third person conveyed the premises to the bankrupt, who continued to hold the property in his own name until February 4, 1878, when he conveyed the same to his co-defendant, without any or upon a grossly inadequate consideration, with intent to defraud his creditors, and that said defendant now holds the same in trust for the bankrupt and with intent to defraud the creditors of the latter; and that none of said California creditors, nor said assignees, ever knew or became aware of the alleged fraud concerning said property until December, 1877.　The defend-

ants demur to the bill separately, but allege the like causes of demurrer.

The first cause is the general one, that the complainant has not made out a case which entitles him to any relief, and the second is like unto it—that the bill does not state facts sufficient to constitute a cause of suit. But there is no such defect or insufficiency in the substance of this case as will sustain a demurrer for want of equity. On the contrary, the case made by the bill is one of a gross and palpable fraud, against which the complainant is entitled to have the relief prayed for, unless for some special and technical cause—as the lapse of time, a mistake in the forum or the like, this suit cannot be maintained. The second cause is borrowed from the code practice, but I believe is unknown to equity pleading. So far as it has any significance it amounts to an allegation that there is no equity in the bill, and in effect is the equivalent of the first cause. They are neither well taken and are both overruled.

The third and seventh causes are substantially the same, and are both to the effect that the complainant is not entitled to sue because he does not really sustain the character he pretends to—that is, he is not the lawful assignee of the estate of Murray. But the complainant is described in the bill as the assignee of the estate, and that is sufficient on demurrer, both at law and in equity. If the defendants wish to contest the right of the complainant to sue in the character assumed —as the assignee of Murray's estate—they must make the objection by a plea denying the right. The case is like the one where a party sues as administrator. The defendant cannot assume that the complainant is not a lawful administrator and question his right to sue in that character by demurrer, but he must make the objection by a plea of ne unques administrator. Story, Eq. Pl. § 727; 1 Chit. Pl. 525; Curt. Eq. Prec. 159. Neither is the demurrer well taken so far as these causes are concerned.

The sixth cause of demurrer is that this court has no jurisdiction to hear the cause or grant the relief prayed for. This is insufficient as a special demurrer, because it does not give any reason why this court is without jurisdiction. But on the argument the ground of the objection was disclosed as follows: This is a suit, among other things, to annul the bankrupt (Murray's) discharge upon the ground of fraud in obtaining it, and no court has jurisdiction of that matter but the district court that granted it.

The argument is, that as by section 5119 of the Revised Statutes, a discharge in the bankruptcy, subject to certain exceptions, of which this case is not one, shall "release the bankrupt from all debts, claims, liabilities and demands, which were or might have been proved against the estate in bankruptcy;" and as by section 5120 of the Revised Statutes, provision is made that any creditor "who desires to contest the validity of the discharge on the ground that it was fraudulently obtained, may, at any time within two years after the date thereof, apply to the court which granted it to annul the same;" it follows that no one but a creditor can maintain a proceeding to annul a discharge, and that no court but the court which granted it has jurisdiction of the same.

But on the other hand it is maintained that, correctly speaking, this is not a proceeding to annul a discharge, but simply to set aside certain fraudulent conveyances whereby the property of the bankrupt has been and now is covered up and prevented from coming to the hands of his assignee, and that the bankrupt is made a party to the suit not for the purpose of affecting in any manner his discharge or establishing or enforcing any claim against him personally, but to relieve the property which rightfully belongs to his assignee from the effects of the fraudulent conveyances received and made by him since the date of the discharge.

There is no doubt but that a direct proceeding to annul a discharge must be brought in the district court which granted it; and the better opinion seems to be that it cannot be attacked or called in question otherwise or elsewhere. Way v. Howe [108 Mass. 502]; contra, Perkins v. Gay, 3 N. B. R. 772. It may be also that such suit must be brought by a creditor in person and not by his representative, the assignee. But whether the limitation of two years within which such proceeding may be brought is to be counted from the date of the discharge or the discovery of the fraud on account of which it is sought to set it aside is a question upon which my mind, in the light of Bailey v. Glover, 21 Wall. [88 U. S.] 346, inclines to the latter view.

Apart, then, from the question, is this a suit to annul a discharge? there is no doubt of the jurisdiction of the court to hear the cause and grant the relief. This suit is one by the assignee against the defendant claiming an adverse interest "touching certain property * * * of the bankrupt transferable to or vested in the assignee," and jurisdiction of it is expressly conferred upon the court by section 4970 of the Revised Statutes. It is not barred by the limitation of two years prescribed by section 5057 because it is alleged in the bill that the fraud was not discovered by the complainant or the former assignee or any of the creditors until December, 1877; and in Bailey v. Glover, supra, the supreme court held that the general principle applies to this limitation, so that where the suit is intended to obtain redress against a fraud concealed by the party, or which from its nature remains secret, "the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing or those in privity with him." The same ruling was made by Mr. Justice Curtis in Carr v. Hilton [Case No. 2,436], upon a similar limitation, contained in section 8 of the bankrupt act of

1841; and this agrees with the rule prescribed by the law of this state in cases of fraud and mistake. Civ. Code Or. § 378.

My best impression is that this is not a suit to annul the bankrupt's discharge, and that so far this court has jurisdiction of it. Indeed, it is not certain that he is a necessary party to the suit. The only relief that can be obtained against him is a discovery. The remaining relief—the conveyance of the property to the assignee, or the setting aside of the fraudulent deeds—is sought only against his co-defendant, in whom the title to the premises is now vested by the wrongful act of the bankrupt. Suppose, for instance, that after the bankrupt's discharge he should receive a conveyance of property purchased by him before he was adjudged a bankrupt, or should unlawfully obtain possession of some of the personal property of the estate, would a suit by the assignee against the bankrupt, to compel a conveyance or delivery of this property to himself, be a proceeding to annul the discharge, or could the bankrupt shelter himself behind this certificate and defraud his creditors of the property with impunity? I think not. The discharge relates back to the filing of the petition, and as to any subsequent intermeddling with or act concerning the estate done or suffered by him, he is liable to the assignee or creditor, as any third person. In this case, the bankrupt, after his discharge, wrongfully took the title to the property, well knowing it to belong to his estate in bankruptcy, and with the like knowledge and the intent to defraud his creditors, subsequently conveyed to his co-defendant; and his discharge, which is a protection against suits, on account of any debt, demand or liability, existing at the time of the adjudication, is no defense to any proceeding on this account.

The fourth cause of demurrer is that this suit was not commenced within two years from the date of the bankrupt's discharge. This, of course, assumes that this is a suit to annul the discharge, and that the statute commenced to run from the date of the discharge, whether the fraud was then discovered or not. Both these assumptions are, I think, incorrect. The demurrer as to this and the sixth cause is not well taken.

The fifth and last cause of demurrer is, that it appears from the bill that the claims of the creditors mentioned therein were barred by the statute of limitations before the commencement of this suit.

In the consideration of this question, I think it must be taken for granted that there are no other creditors of the bankrupt than those named in his schedule and mentioned in the bill. There is no allegation in the bill that there are any other creditors. It must also be admitted that all these claims, though not barred by the statute of limitations of Oregon, at the date of the adjudication, were so barred before the commencement of this suit, the causes of action arising thereon having accrued more than six years prior thereto. Civ. Code Or. § 6.

The question, what effect have the statutes of limitations of the several states upon the proof of debts in bankruptcy, has not been passed upon by the supreme court, and the decisions of the lower courts upon the matter are conflicting.

In Re Ray [Case No. 11,589], Judge Blatchford held that a debt, although barred by the statute of the state in which the debtor resided, was provable in bankruptcy, unless barred throughout the United States.

In Re Shepard [Id. 12,753] Judge Hall held that a debt against which the statute of limitations of the state had run, was nevertheless a debt, and might be proved and allowed in bankruptcy, for the reason that there was no statute of the state (N. Y.), or the United States, which prevented it. On the other hand, in Re Kingsley [Id. 7,819] Judge Lowell held that a debt, barred by the statute of the state where the debtor resides, cannot be proved against his estate in bankruptcy; which agrees with the English rule: Ex parte Dewdney, 15 Ves. 479. In Re Hardin [Case No. 6,048] Judge Fox made the same ruling. In Re Reed [Id. 11,635] Judge Blodgett held that the defense of the statute of limitations might be made "to the claim of a creditor seeking to prove his debt in bankruptcy, whenever that defense might be made in a suit in the state where the debtor resides." In Re Noeson [Id. 10,288] Judge Dyer ruled that a debt barred by the statute of Wisconsin could not be proved in bankruptcy therein. In Re Cornwall [Id. 3,250] Judge Woodruff held that the courts of the United States, when sitting as courts of bankruptcy, were as much bound by the statutes of limitations of the states in which they sit as in ordinary cases, and therefore a debt barred by the statute of New York was not provable therein, in bankruptcy.

From this summary of the cases it will be seen that the decided weight of authority is in favor of the application of the statute of limitations to claims in bankruptcy, and, in my judgment, that of reason also. Doubtless congress might have established a uniform rule of limitation as to the proof of debts in bankruptcy, as it may do in regard to proceedings in the national courts generally. Peiper v. Harmer [8 Phila. 100]. But it has not done so, and the inference therefrom is strong and convincing that it was the intention to leave the matter to be governed by the local law. This is more evident, from the fact that if a claim is contested upon the proof, an appeal lies to the circuit court (Rev. St. §§ 4980, 4984), where the claim must be declared upon and tried as in an action at law. In such action the court would be bound, under section 34 of the judiciary act (Rev. St. § 721) to give effect to the statute of limitations of the state, and if the claim was barred by such statute the creditor could not recover. It can hardly be supposed that con-

gress intended that the state statute of limitations should be applicable to the claim on the trial in the circuit court, and not so in making proof of it in the district court.

My conclusion is, that the statute of limitations of the state where the debtor is adjudged a bankrupt, applies to all debts due from the bankrupt with the same effect, as if the claim was then sued upon in the state court.

The next question is, if a claim is not barred when the petition in bankruptcy is filed, does the statute of limitations continue to, run against it thereafter, or may it be proven at any time after the adjudication, although the period prescribed by the statute as a bar to an action thereon has elapsed?

In Re Eldridge [Case No. 4,331] Judge Hughes held that the statute ceases to run from the commencement of the proceedings in bankruptcy, and if a debt is not then barred it may be proven at any time afterwards. In support of this ruling the case of Ex parte Ross, 2 Glyn & J. 46, and cases arising under the Massachusetts insolvent law were cited. In Ex parte Ross, supra, the commission issued in 1810, and the debt was due in the same year. On an application to prove the debt in 1824, and an objection that six years had elapsed, the vice-chancellor held that the statute did not run against a creditor after a commission issued; that the commission was a trust for the benefit of all the creditors, and the statute never ran against a trust; and upon appeal to the lord chancellor, this ruling was affirmed. The case In re Eldridge is the only one I have found in the national courts upon the point.

I am not satisfied with the doctrine of this case. It seems to me it avoids in a great measure the rule that the local statute of limitations shall govern. But for the adjudication in bankruptcy these claims would all have been barred before 1873. And yet this adjudication in no way hindered the creditors from proving these claims in the court of bankruptcy before the expiration of six years from their maturity, and thus have prevented the bar of the statute from attaching to them. The bar of the statute is founded upon the presumption of payment from the lapse of time, and there is as much reason in presuming payment or satisfaction of a debt maturing after the bankruptcy of the debtor as before. Both on the ground of public convenience and private security the presumption ought to prevail in the one case as well as the other. The motion that the case becomes a trust fund in the hands of the assignee, and, therefore, the statute of limitations ceases to run against an unproved and unknown claim upon such fund, seems to rest upon a mistaken analogy. True, the assignee may be called a trustee by operation of law, in invitum, to distribute the estate according to law; that is, to pay the valid subsisting claims as far as the assets will permit, and to pay over the residue, if any, to the debtor.

But this does not make each creditor, whether known to the assignee as such or not, a cestui que trust, between whom and the assignee there is that relation of personal trust and confidence that prevents any presumption arising to the prejudice of the former from mere lapse of time. On the contrary, there is no actual trust and confidence between the parties—prior, at least, to the proof and. allowance of the creditors' demand—and, therefore, it cannot be that, by reason of adjudication in bankruptcy, his claim is exempt from the ordinary law of proof and presumption, but may be dug up at any time and proved against the estate, when in the common course of affairs the evidence of its payment or illegality is lost or forgotten. I do not forget in this connection that the debts in question are upon the bankrupt's schedules. But the doctrine that there is an actual trust between the assignee and each creditor, and, therefore the statute of limitations does not run against the latter after an adjudication in bankruptcy, applies, if at all, to debts off the schedules as well as those upon them. Neither is the mere fact that the claim is mentioned in the schedules any sufficient security against the danger of delay in making proof thereof. The claim, although upon the schedules may not be valid as against the other creditors, if at all. Indeed, in this very case, it is alleged in the bill that the principal debt named in the bankrupt's schedule is fictitious and fraudulent.

An assignee, like an administrator, is really the officer or agent of the law to distribute the estate among those legally entitled to it. Each creditor is interested in preventing the allowance of illegal claims—claims which could not be collected by the ordinary process of law.

The statute (Rev. St. § 5067) provides that "all debts due and payable from the bankrupt at the time of the commencement of the proceedings in bankruptcy, and all debts then existing but not payable until a future day, * * * may be proved against the estate of the bankrupt."

It must be admitted that this language taken literally and alone, would permit the proof of these debts. There is no limitation in the statute upon the time of making the proof. But it must be construed with reference to existing laws upon the subject of "debts due and payable"—among others, the local statute of limitations. Considered in this connection, a simple contract debt after six years from maturity, being no longer "a debt due or payable." the statute must be construed as if it read, "may be proved against the estate of the bankrupt, if done so before the lapse of time has raised the presumption of their payment or satisfaction."

Of course, a case may arise where the limitation upon the proof of the claim would expire between the filing of the petition and the adjudication in bankruptcy, in which event it might be necessary to hold that this period

should not be counted in the limitation, or that the creditor should have some reasonable time after notice of the adjudication to make his proof. Indeed, this is a proper subject of legislation, and the bankrupt act should have contained a provision covering the whole subject of limitation upon the proof of debts, and not left it to be worked out in the courts by means of otherwise unnecessary and profitless litigation.

Having reached the conclusion that the debts mentioned in the bill cannot be proven against the estate of the bankrupt, it follows that this suit cannot be maintained.

For whatever the character of the transactions complained of concerning this property, the court cannot interfere with it unless it appears that the assignee represents some creditor who has a claim which he is now entitled to have paid out of it. The remainder of the bankrupt's estate, if any, after the payment of all valid debts, belongs to the bankrupt himself, and the assignee holds it in trust for him. In re Hoyt [Case No. 6,806]; In re Lathrop [Id. 8,104].

To grant the relief prayed for in this bill would then be a useless act. It does not appear that there are any debts that could be proven against the estate, and therefore, it the property was given to the assignee, he would be bound to reconvey it to the bankrupt.

A decree will be entered dismissing the bill.